UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

ANTHONY R. DUMOLO,

                                       **MEMORANDUM AND ORDER**

        *Plaintiff*,              17-CV-7294(KAM)(CLP)

   -against-

GREGORIO D. DUMOLO and DONNA M DUMOLO,

        *Defendants*.
--------------------------------------X

**MATSUMOTO, United States District Judge**:

        On December 14, 2017, Anthony Dumolo, ("plaintiff" or "Anthony") commenced the instant action by filing a complaint against Gregorio Dumolo and Donna Dumolo, his brother and sister. (*See* ECF No. 1, Compl.) This family dispute centers around an agreement made between siblings and their ailing mother to distribute her estate in equal shares to her three children after their mother's death. At the heart of the agreement (the "Family Agreement" or "Agreement"), and this dispute, is a residence in Wantagh, New York at 930 Park Drive (the "Premises").

        After filing the complaint, plaintiff effected service on defendants in January 2018.[1] (ECF Nos. 7, 8.) In April 2018, after neither defendant appeared, answered, or otherwise moved,

---

[1] A review of the filed executed summonses in this case indicates both defendants were properly served, Gregorio under N.Y. C.P.L.R. § 313 by service "without the state," and Donna under N.Y. C.P.L.R. § 308 through "nail-and-mail" substitute service. (*See* ECF No. 12-6.)

plaintiff requested a certificate of default as to both defendants pursuant to Federal Rule of Civil Procedure 55 ("Rule 55"). (ECF No. 10.) The Clerk of Court entered a default against both defendants, (ECF No. 11), and plaintiff now moves this court for an entry of default judgment and an award of damages, (ECF No. 12).

**BACKGROUND**

I.  **Fact Summary**

Based on the allegations of the complaint, to which the defaulting defendants have not responded, Plaintiff, Anthony Dumolo, and defendants, Gregorio and Donna Dumolo, are siblings. (ECF No. 1-2, Compl., Ex. 2, Dumolo Decl. at 1.) Their mother, Marie Dumolo ("Marie"), owned their family home, the Premises located at 930 Park Drive, Wantagh, New York. (*Id*.)

Marie passed away on January 5, 2004. (*Id*.) Approximately four months prior to her death, on or about August 18, 2003, Marie and her children entered into a Family Agreement. (*See* Dumolo Decl., Ex. 1, Executed Family Agreement ("Fam. Agmt.").) Marie was in such poor health at the signing that she marked "X" in lieu of her signature. (*Id.* at 4-7.)

The Family Agreement concerned the distribution and division of Marie's assets, including the Premises, amongst her three children and expressed her desire that the siblings inherit equally from her estate. (*Id*. at 1.) The Agreement

specified that title to the Premises would be transferred to Gregorio. (*Id.* at 2.) Mother and siblings agreed that New York law would govern the Agreement. (*Id.* at 3.) The Agreement thus outlined a plan to value and divide Marie's assets among her children upon her death. (*Id.* at 2.) For the purposes of valuing her estate, the Premises would be valued at its fair market value at the time of Marie's death.[2] (*Id.*) The siblings agreed to furnish to each other the necessary documents to support the value of "any and all assets" of their mother's estate and any property under the Agreement. (*Id.*) Gregorio further agreed to maintain all records related to any disbursements and expenditures made in maintaining the Premises; any such expenditures would, in turn, reduce the value of the property. (*Id.*) Within twelve months of the date of Marie's death, Gregorio agreed to do one of the following:

- (A) Sell the [Premises] and transfer to ANTHONY and DONNA each a one-third (1/3) share of the net proceeds, or
- (B) Pay over to ANTHONY and DONNA each a sum representing a one-third (1/3) share of the fair market value of the [Premises], or
- (C) Convey to ANTHONY and DONNA each an undivided one-third (1/3) interest in the [Premises], or
- (D) Execute a mortgage in favor of each of ANTHONY and DONNA in an amount equivalent to one-third (1/3) of the fair market value of the [Premises].

(*Id.* at 2-3.)

---

[2] The Agreement approximated the value of the Premises to be $350,000 at the time of signing. (Fam. Agmt. at 1.)

In December 2003, Gregorio asked of Anthony that the twelve-month period following their mother's death, specified in the Family Agreement and within which Gregorio agreed to sell the Premises, be tolled until after he retired. (Dumolo Decl. at 4.) Plaintiff agreed to this tolling. (*Id.*)

Gregorio retired in 2012, and sometime after, Anthony unsuccessfully attempted to contact Gregorio by telephone. (*Id.* at 5.) Anthony was then unaware of Gregorio's exact whereabouts, as he had moved from the Premises. (*Id.*) Through counsel, plaintiff ascertained Gregorio's whereabouts and wrote to him on July 27, 2016. (*Id.*) He informed Gregorio that he was in breach of the Agreement and had deprived Anthony of his one-third share of the inheritance. (*See* Dumolo Decl., Ex. 3, July 27, 2016 Letter.) The letter expressed Anthony's desire to resolve the dispute amicably and proposed Gregorio comply with the terms of the Agreement within 30 days and to distribute the inheritance to the siblings within 60 days. (*Id.*)

On August 21, 2016, Gregorio replied to plaintiff's correspondence. (Dumolo Decl., Ex. 4, Aug. 21, 2016 Letter.) Gregorio defended his actions but nevertheless apologized that he "fell short" in his obligation by failing to sell the house. (*Id.*) He represented that he would put the house up for sale by May 1, 2017, noting that this would provide time to "fix-up" the house, and for Donna to move out. (*Id.*)

4

Plaintiff's counsel replied on September 21, 2016, to Gregorio. (Dumolo Decl., Ex. 5, Sept. 21, 2016 Letter.) Plaintiff rejected Gregorio's proposed timeline, and counter-proposed proceeding with option B from the Agreement, payment by Gregorio to his siblings of a one-third share each of the fair market value of the Premises. (*Id.*) Plaintiff did not receive a response to his September 21, 2016 letter, or to a December 5, 2016 letter from plaintiff's counsel to Gregorio. (Dumolo Decl. at 8; *see also* Dumolo Decl., Ex. 6.)

Plaintiff alleges that Gregorio and Donna failed to fulfill their obligations under the Family Agreement, and that Gregorio failed to fulfill his promise to sell the Premises after his retirement in 2012 or to put the Premises on the market by May 1, 2017. (Dumolo Decl. at 9.) As a result, plaintiff was denied his inheritance. (*Id.*) Plaintiff alleges that "the damages, opportunity costs, and inequitable conduct sustained by my family and me, as a direct result of egregious selfishness and misconduct by Defendants are well over $250,000." (*Id.*) In support of this figure, plaintiff provides a New York State Multiple Listing Service ("MLS") listing, that values the home at $475,850 using something called the Automated Valuation Model.[3] (Dumolo Decl., Ex. 7, MLS Listing.)

---

[3] The Automated Valuation Model refers to a service that uses mathematical modeling combined with databases of existing properties and transactions to calculate real estate values. Will Kenton, *Automated*

5

**LEGAL STANDARD**

## II.     Default Judgment

Pursuant to Rule 55, courts follow a two-step process to enter default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, the Clerk of Court must enter a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). A court considers an entry of default against a party to be an admission of all the well-pleaded allegations in the complaint regarding liability. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *see also Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F. 3d 241, 246 (2d Cir. 2004) ("[Rule 55] tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party."). Second, if the defaulting party fails to appear or move to set aside the entry of default under Rule 55(c), the opposing party may file a motion for default judgment to establish liability and damages. *See* Fed. R. Civ. P. 55(b)(2).

---

*Valuation Model – AVM*, Investopedia (Mar. 29, 2018), https://www.investopedia.com/terms/a/automated-valuation-model.asp. It is used widely by appraisers and other institutions. *Id.*

6

**A. Liability**

However, an entry of default does not necessarily entitle a moving party to default judgment "as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The court must determine whether the plaintiff's allegations establish "liability as a matter of law," thus warranting default judgment. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . ."). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Thus, courts grant a motion for default judgment only if the plaintiff has satisfied its burden of demonstrating that the unchallenged allegations, and all reasonable inferences drawn from the evidence, establish the defendant's liability on each asserted cause of action. "Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper

7

basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010).

   **B. Damages**

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

Once the court finds a defaulting party liable, it next considers whether the movant "has met the burden of proving damages to the court with 'reasonable certainty.'" *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). An evidentiary hearing is not required to determine damages so long as there is a basis for the awarded damages specified in the default judgment. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). "[A] review of detailed affidavits and documentary evidence" is sufficient to form a basis for calculating reasonably certain damages. *Cement & Concrete Workers*, 699 F.3d at 234; *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F.

Supp. 2d 108, 114 (E.D.N.Y. 2011) ("In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient.").

**DISCUSSION**

**I.      Personal Jurisdiction**

Plaintiff alleges that he is a citizen and resident of Connecticut and that defendant Donna Dumolo is domiciled in and a citizen of New York. (Compl. ¶¶ 2, 4.) Thus, there is diversity jurisdiction between plaintiff and Donna Dumolo. Though plaintiff alleges that Gregorio is a dual-citizen of New York and Pennsylvania, he does not offer facts sufficient to establish his residence in New York, thus supporting this court's diversity jurisdiction over Gregorio. The court must therefore satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants. *See Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

Under New York's long-arm statute, the court may establish personal jurisdiction over non-domiciled individuals,

such as Gregorio, where he has transacted business in the state, personally or through an agent, and when the claim asserted arises from that activity. N.Y. C.P.L.R. § 302. Proof of one transaction, or a single act, is sufficient to invoke long-arm jurisdiction in New York. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). Here, Gregorio duly signed the Family Agreement in Nassau County, New York on August 18, 2003. (Fam. Agmt. at 4.) Because this dispute arises from the alleged failure by Gregorio to perform the duties regarding the Premises located in New York, as specified in the Family Agreement, the court finds that Gregorio is subject to its jurisdiction.

**II.    Limitations Period**

The limitations period for contract disputes governed by New York state law is six years. N.Y. C.P.L.R. § 213(2). Plaintiff avers that he agreed to toll the twelve-month period within which Gregorio was required to satisfy his obligations under the Agreement. (Dumolo Decl. at 4.) According to plaintiff, the period was tolled by this subsequent agreement until Gregorio retired from the U.S. Postal Service, which he did in 2012. (*Id.*) Indeed, Gregorio references this tolling agreement in his August 21, 2016 letter. (*See* Aug. 21, 2016 Letter.) However, the court must nevertheless determine whether this subsequent agreement was a valid modification of the

contract under New York State law. If the modification was not valid, then the breach of contract occurred, and plaintiff's cause of action accrued, twelve months from the date of Marie's death, or January 5, 2005. As such, the six-year limitations period would have expired on January 5, 2011, and plaintiff's complaint, filed December 14, 2017, would be untimely.

Under New York law, a contract cannot be modified or altered without the consent of all the parties thereto. *Becker v. Faber*, 280 N.Y. 146, 149 (N.Y. 1939), *reh'g denied*, 280 N.Y. 730 (N.Y. 1939). In the absence of mutual assent to a proposed modification, the original terms of the contract control. *Beacon Terminal Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715, 717-18 (N.Y. App. Div. 1980).

A contractual modification may be demonstrated by the parties' respective course of conduct indicating assent. *See Chase v. Skoy*, 536 N.Y.S.2d 512, 513-14 (N.Y. App. Div. 1989); *see also Recon Car Corp. of N.Y. v. Chrysler Corp.*, 515 N.Y.S.2d 829, 833 (N.Y. App. Div. 1987). To be valid, a modification must satisfy each element of a contract, including offer, acceptance, and consideration. *O'Grady v. BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 502 (S.D.N.Y. 2015) (citing *Beacon Terminal*, 429 N.Y.S.2d at 718). The parties' course of conduct constituting modification must nevertheless evince a meeting of the minds. *Id*. Parties may also orally modify

11

written contracts that do not expressly prohibit such oral modifications. *Maricultura Del Norte v. World Bus. Capital, Inc.*, 159 F. Supp. 3d 368, 377 (S.D.N.Y. 2015) (citing *Healy v. Williams*, 818 N.Y.S.2d 121, 123 (N.Y. App. Div. 2006)). However, some performance is necessary to confirm the oral modification, and it must be "unequivocally referable to the oral modification." *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990) (quoting *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343 (N.Y. 1977)).

Here, the alleged tolling agreement constitutes a modification to enlarge the time for Gregorio's performance. Without evidence of a contemporaneous writing, the court treats this alleged modification as an oral modification. As such, some proof of consideration is required for the modification to be valid. *Cf. Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 660 (S.D.N.Y. 2008) ("Modifications to a contract, however, need not be supported by additional consideration when the modification is in writing and signed by the party against whom it is sought to be enforced."); *see also* N.Y. Gen. Oblig. Law § 5-1103 (McKinney 2019). Gregorio's alleged agreement to share equally from the fair market value of the Premises, instead of reducing the value by his disbursements, constitutes the relinquishment of a right and is sufficient consideration. *See Jemzura v. Jemzura*, 36 N.Y.2d 496, 496 (N.Y. 1975).

Although plaintiff indicates in his submissions that he and Gregorio agreed to this tolling, the record contains no affirmative allegations whatsoever concerning defendant Donna's assent to this tolling modification. Though a course of conduct may indicate assent, it must unequivocally be directed at the modification. Donna's alleged continuing residence in the Premises, as stated in Gregorio's letter, could indicate her desire not to leave, and coupled with the additional time she was granted to "get it together and move out," could unequivocally constitute some performance indicating her mutual assent to the terms of the tolling modification. Plaintiff, however, has not provided sufficient and unequivocal facts that all parties agreed to the modification to the Family Agreement.

As such, the court finds that, based on the record before it, the tolling agreement does not appear to be valid. Plaintiff's cause of action therefore accrued on January 5, 2005, one year after his mother's death, and in the absence of a valid tolling agreement, the limitations period expired six years later, on January 5, 2011. Thus, plaintiff's breach of contract claim appears to be untimely.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for default judgment, based on his breach of contract claim, is DENIED without prejudice to renew. Plaintiff is directed to

serve a copy of this order on defendants, and file proof of service on the docket, within one week from the date of this order.  Plaintiff may file a renewed motion for entry of a default judgment, with adequate supporting evidence regarding the tolling agreement, and on notice to the defendants, no later than April 15, 2019.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 26, 2019

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York